DAVID M. BOWES, as Administrator, etc., of HENRY W. BOWES, Deceased, Plaintiff, *v.* THE NATIONAL CITY BANK OF NEW YORK, Defendant.

Supreme Court, Steuben County, September 21, 1938.

*Cheney & Costello,* for the plaintiff.

*Sales, Flannery, Collin & Evans,* for the defendant.

VAN VOORHIS, J.   In order to decide this motion it is necessary to consider what matters concerning which plaintiff seeks to examine defendant before trial are material and necessary to the prosecution of the action.

The complaint alleges that plaintiff's intestate, Henry W. Bowes, was indebted to the defendant for money loaned upon his promissory note in the amount of $84,053.12, which was secured by collateral consisting of stocks and bonds which had at the time of his death a market value of approximately $153,662.75; that after the appointment of the plaintiff as administrator the said securities appreciated greatly in market value, but thereafter depreciated and were subsequently sold by the defendant under powers of attorney providing therefor in the agreement of hypothecation at the lowest market prices during the depression of 1932, resulting in large losses to the estate of Mr. Bowes.

The complaint further alleges that his intestate made an agreement with the defendant whereby interest and dividend payments from other securities which were not included in the collateral were to be paid to the defendant to the credit of plaintiff's intestate and could be used by the defendant in its discretion in reduction of the loan or in payment of interest thereon, that payments from such interest and dividends were received by defendant for which plaintiff was not credited, and likewise that defendant permitted stock subscription rights pertaining to the collateral to lapse without selling them which resulted in loss to the estate.   It is further alleged in the complaint that portions of the collateral to the said loan were sold by the defendant at prices below their " fixed and intrinsic " value.

The plaintiff is entitled to take the defendant's deposition coupled with the production of relevant books and papers concerning the arrangements between Henry W. Bowes and the defendant in respect to the disposition of dividends and interest and the acts of the defendant in reference thereto; and concerning also the acts of the bank in regard to subscription rights pertaining to shares of Anaconda Copper Mining Company which were part of the collateral, the facts with reference to the sale of shares in the Pan American Petroleum Corporation together with the facts in relation to the sale by the defendant of all securities pledged as collateral to the loan with the dates of sale, amounts brought and the names of purchasers including the efforts made by the defendant to secure purchasers and any other matters tending to indicate whether the sales were *bona fide* or mere bookkeeping entries. Included in the last category are all facts with reference to whether the defendant performed its duty as a pledgee in conducting a *bona fide* sale of the Pan American Petroleum Corporation shares which involves the issue as to whether the said stock could have been sold at the higher figure at which plaintiff claims certain oil companies were then willing to buy it, and whether these circumstances were known to the defendant or should have been known by it as a result of investigations prompted by reasonable efforts to conduct a private sale. (*Cole* v. *Manufacturers Trust Co.*, 164 Misc. 741.) To this extent the motion is not opposed, and is granted.

The controversial questions arising upon the motion are connected with those portions of the complaint which state that the defendant by means of what is alleged to have been a subsidiary known as the National City Company manipulated the market for securities of the same kinds and in the same corporations as those which had been pledged with the defendant as collateral to secure the loan of plaintiff's intestate. There is no allegation that the defendant or the National City Company acquired the identical shares of stock or bonds which constituted the collateral, but it is claimed that by pooling and other operations the National City Company caused the market for such securities to depreciate to a point greatly below their intrinsic value resulting in their sale at the low point in May, 1932, with consequent loss to the Bowes estate.

An essential step in establishing this theory of liability is proof that the relationship between the defendant National City Bank and the National City Company was such that the former is responsible for the acts of the latter. It is the contention of the plaintiff that the National City Company was a subsidiary of the defendant and acted in its interest and on its behalf for the purpose

of enabling it to deal in securities prohibited to it by the National Banking Act. In order to prepare himself to offer evidence upon the trial to establish such relationship the plaintiff seeks upon this motion to examine the defendant concerning the relationship between the National City Company and defendant National City Bank and all of the transactions of the National City Company with relation to securities of the kinds pledged by the Bowes estate with the National City Bank.

Defendant opposes this part of the application upon the ground that the portions of the complaint last referred to fail to state a cause of action against the defendant, that the only portions of the complaint which do state a cause of action are those in connection with which an examination before trial has hereinbefore been directed, and that everything in the complaint in regard to the National City Company and its activities is surplusage.

An application for an examination before trial is not a suitable occasion to pass upon the sufficiency of a pleading unless its inadequacy is evident upon its face and free from doubt. (*Moffat* v. *Phœnix Brewery Corp.*, 247 App. Div. 552.) Tested by this standard, it is not clear that the complaint in these respects fails to state a cause of action inasmuch as it is alleged to be the fact that the National City Company was a subsidiary of the National City Bank and acted on its behalf in these transactions. If that be true, the defendant is to be regarded as bound by the acts of the National City Company and owed some duty to the plaintiff arising out of the fiduciary nature of its relationship as pledgee of his collateral. Undoubtedly a pledgee's " character is that of trustee for the pledgor, *first*, to pay the debt, and *second*, to pay over the surplus, and he cannot so deal with the trust property as to destroy or even impair its value." (*Wheeler* v. *Newbould*, 16 N. Y. 392, 398; *Gillet* v. *Bank of America*, 160 id. 549, 560; *Toplitz* v. *Bauer*, 161 id. 325, 332; *Cole* v. *Manufacturers Trust Co.*, 164 Misc. 741, 744; *First Trust & Deposit Co.* v. *Potter*, 155 id. 106.) This rule has its origin in the case of pledges of tangible personal property because " the possession and control is thought to give the trustee such opportunities for oppression and wrong in the management of the property as calls for the closest scrutiny of his acts." (*Cole* v. *Manufacturers Trust Co.*, 164 Misc. 741, at p. 745, quoted from *Dibert* v. *D'Arcy*, 248 Mo. 617, 647; 154 S. W. 1116, 1125.) That is to say, if a man pledges his watch at a pawn shop, and the proprietor takes a hammer and smashes the watch, the pawn shop is liable for the damage. It is argued that the same rule governs if the subject of the pledge is stock, and if it be established that

the pledgee intentionally impaired its value by his own act in manipulating the stock market. The fiduciary nature of the relationship between pledgor and pledgee is limited (*Hennequin* v. *Clews*, 111 U. S. 676; *Colonial Trust Co.* v. *Hoffstot*, 219 Penn. St. 497; 69 A. 52), and no general duty rests upon a bank to disclose to its customers knowledge which it may possess concerning the value of hypothecated securities (*Willett* v. *Herrick*, 258 Mass. 585, 589; 155 N. E. 589; *Hunter* v. *First National Bank of Ft. Wayne*, 172 Ind. 62; 87 N. E. 734; *Lake* v. *Little Rock Trust Co.*, 77 Ark. 53; 90 S. W. 847), or even to refrain from business transactions which may affect their worth. Conceivably, however, a bank may not with impunity engage upon a course of conduct for the sole purpose of injuring the market for its customer's collateral without at least giving the customer notice so as to enable him to protect himself, nor could it, perhaps, without violating the duties arising out of its limited trust relationship to its customer as pledgee of his collateral, be financially interested in another corporation engaged in such activities.

It does not follow that plaintiff is entitled to examine the defendant before trial for the purpose of showing that the National City Company was a subsidiary of the National City Bank and acted in its interest in the transactions alleged. Plaintiff cannot succeed without establishing those facts, but in the absence of special circumstances an examination before trial will not be ordered where its purpose is to compel the defendant to disclose to the plaintiff whether or not there is a cause of action, and the party seeking the examination must show some reasonable grounds for belief that the result of the examination will be to establish the matters which he seeks to prove which are material and necessary to the cause of action which has been alleged. (Rules Civ. Prac. rule 122; *Knight* v. *Morgenroth*, 93 App. Div. 424; *Matter of Anthony & Co.*, 42 id. 66; *Wood* v. *American Locomotive Co.*, 246 id. 376, 378.) Undoubtedly the defendant as pledgee of plaintiff's collateral is under a duty to make full disclosure of its acts in reference thereto, but no presumption will be indulged that defendant is responsible for the acts of the National City Company nor will an examination before trial be directed to prove it without some reasonable ground to believe it to be the fact. The moving affidavits contain the bare assertion by the plaintiff that " the defendant bank was actively engaged in speculating in many of the securities which had been so pledged through and by means of a corporation known as the National City Company, which said corporation was a subsidiary of, or was owned, or in some manner controlled by, the defendant or its officers," but without stating the sources of the affiant's information

or the grounds for his belief to that effect. A motion for the examination of a party before trial will be denied where it is based upon affidavits sworn to upon information and belief accompanied by no statement of the sources of the information or the grounds for the belief. (*Jiminez* v. *Ward* 21 App. Div. 387; *Cook* v. *New Amsterdam Real Estate Assn.*, 85 Hun, 417; *Matter of Bronson*, 78 id. 351; *Koehler* v. *Sewards*, 8 N. Y. Supp. 504; 55 Hun, 608.) Notwithstanding that greater latitude has been allowed since the adoption of the Civil Practice Act, it is still necessary to show that the examination is material and necessary (Civ. Prac. Act, § 288; Rules Civ. Prac. rule 122), and where the moving affidavits are upon information and belief, it is still necessary to state the sources of information and grounds for belief. (*Glasser* v. *Borglund*, 248 App. Div. 898.) Apparently in order to supply that deficiency, although it is not mentioned in his affidavits, plaintiff's counsel has furnished the court with a copy of the Report of the Committee on Banking and Currency of the United States Senate (Senate Resolutions 84 of the Seventy-second Congress and 56 and 97 of the Seventy-third Congress). The investigation and report of this committee concerned the operation of the act of Congress of June 16, 1933 (U. S. Code, tit. 12, 377), abolishing national bank affiliates. On pages 156–159 are set forth briefly the facts which the committee found constituted the relationship between the National City Bank and the National City Company. They are evidently the same facts which it is the purpose of this deposition to enable the plaintiff to prove by means of admissible legal evidence. They do not vary materially from those stated in the defendant's affidavits upon the motion, and are, that the National City Company was organized by stockholders of the National City Bank who furnished the capital for the National City Company out of dividends which they received upon stock of the National City Bank, and that all of the capital stock of the National City Company was issued and held pursuant to agreement by three trustees for the benefit *pro rata* of shareholders of the National City Bank. Under the trust agreement these trustees were required to be officers and directors of the bank and transfers of beneficial interests in the company were prohibited without a transfer of the corresponding shares of the bank. These basic facts are so well established that the court may safely rely upon them in the disposition of this motion, and conclude that if an examination before trial of the defendant is held, it will result merely in enabling the plaintiff to prove them for the purposes of the trial. Such a conclusion is warranted for the reason that these matters have been set forth as facts in defendant's affidavit upon knowledge and are not contra-

dicted by any averments in plaintiff's affidavits except those above referred to which are set forth upon information and belief without the support of any statement of the sources of the information or the grounds for the belief of the affiant. If the Senate Committee's report is considered for that purpose, it shows the facts to be the same as those stated in the affidavit submitted by defendant. If, although rendered capable of being established by legal evidence upon the trial, these facts would be of no probative force to sustain the plaintiff's claim, the examination would be irrelevant and not material or necessary to the cause of action. The question resolves itself into whether the relationship between the defendant and the National City Company disclosed by the defendant's affidavit and the report of the Senate Committee is such as to support the allegations of the complaint to the effect that the National City Company was the agent of the defendant concerning the transactions alleged, or at least that it was a subsidiary of the defendant with the result that the defendant was financially interested in the operations of the National City Company in derogation of its fiduciary obligations to the plaintiff.

An analysis of these facts shows that they do not support either conclusion drawn from them by the plaintiff. The National City Bank was not a stockholder and had no financial interest in the National City Company, which was organized for the benefit of the stockholders of the National City Bank as individuals. The strongest link between the two corporations is the clause in the agreement attaching all beneficial interests in the company to shares in the bank with the result that a person could not be a beneficial shareholder in the company without being a shareholder in the bank and *vice versa*. The effect of the arrangement was undoubtedly to enable the stockholders of the bank to benefit from investments which the bank was prohibited to make by statute, but although combining in the same shareholders equity interests in two corporations of this nature was sufficient justification to outlaw the system for the future it is not enough to establish identity between the corporations themselves. Its shareholders but not the National City Bank were interested in the National City Company, which has previously been found *not* to be the *alter ego* of the bank. (*Gallin* v. *National City Bank*, 152 Misc. 679, especially findings of the court.)

The distinction for present purposes between the National City Bank and its shareholders is not merely formal, but also substantial. The bank, it has just been said, had no interest in the National City Company. The bank comprises not only shareholders but also creditors, that is to say, its depositors. No judgment can be rendered in favor of the plaintiff against the National City Bank

without affecting adversely the rights of its depositors for the reason that such a judgment would be a determination that the amount of creditors of the bank is enlarged, and the satisfaction of the judgment would reduce to that extent the assets to which the depositors are entitled to look for repayment. Conceivably there may be other claimants in similar position to the plaintiff. Whether the plaintiff's claim or similar claims would, if sustained, result in actual loss to the depositors of the bank is not now important except to note that the depositors stand no chance to benefit from the National City Company, whereas a recovery against the bank on account of the acts of the National City Company to that extent depletes the assets which secure their deposits. The court may take judicial notice that the assets of a bank derived from its depositors far exceed its capital and surplus. The interest of the depositors outweighs that of the shareholders who together form the substance of the corporate entity known as a bank. This is only to illustrate that from the undisputed facts presented upon this motion, the National City Bank as a corporation was not interested in and could derive no benefit from the National City Company.

Neither did the fact that some of the officers and directors of the National City Company were also officers and directors of the defendant make the company the agent for the bank, or cause the bank as a corporation to become interested in the affairs of the company. The defect inherent in banking affiliates is that it offers opportunity for the affiliate to profit at the expense of the bank rather than for the bank to profit at the expense of the affiliate; that it makes possible the use of funds of the bank for the benefit of shareholders in ways not permitted by statute. The funds of the affiliate are not applied to the use of the bank. Having officers and directors in common undoubtedly gave knowledge to the National City Bank of the activities of the National City Company, but it has been pointed out above that mere knowledge is insufficient for the plaintiff's purposes unless the bank as a corporation stood to gain by the activities of the company. On the contrary, the company was not organized to effectuate any of the purposes of the bank unless it be a purpose of the bank to make money for the shareholders at the expense of the bank. Such officers and directors were placed in a position where they might abuse their trust to the bank for the benefit of the affiliate but were not rendered prone to violate their duties to the affiliate for the sake of the bank. Here the wrong alleged consisted in depressing the market value of plaintiff's intestate's collateral, but if that was a wrong to the plaintiff it was also a wrong to the bank which held the collateral

to secure the loan which it had made. The same man can seldom serve two masters, but if he tries to do so and fails, his breach of trust will scarcely create a cause of action against the one that has been betrayed. Cases upon the subject of overriding the corporate entity are not in point inasmuch as the application of that doctrine would involve the stockholders who were beneficially interested in both corporations, but not the defendant. Whether those persons who were directors or officers of both corporations are liable to the plaintiff is another question which is not presented for the reason that they are not parties to the action.

Inasmuch as it does not appear that there is reasonable ground to believe that the facts which plaintiff proposes to elicit will assist in proving his cause of action upon this branch of the case, said portion of the motion is denied.